HELEN WOODBRIDGE *v.* ANNIE L. DESROCHERS.

DONALD E. WOODBRIDGE *v.* SAME.

ELSA W. WOODBRIDGE, *by her next friend v.* SAME.

ELIZABETH HUBBARD, *by her next friend v.* ANNIE L. DESROCHERS *& a.*

E. L. HUBBARD *v.* SAME.

HORTENSE DUNN *v.* ANNIE L. DESROCHERS *& a.*

88

*Thorp & Branch* (*Mr. Branch* orally), for the plaintiffs Helen Woodbridge, Elsa W. Woodbridge and Donald E. Woodbridge.

*Tilton & Tilton* (*Mr. Frederick A. Tilton* orally), for the plaintiffs Elizabeth Hubbard and E. L. Hubbard.

*Dennis E. Sullivan* (by brief and orally), for the plaintiff Hortense Dunn.

*Murchie & Murchie* (*Mr. Alexander Murchie* orally), for the defendant Annie L. Desrochers.

*Sulloway, Piper, Jones, Hollis & Godfrey* (*Mr. Piper* orally), for the defendant John F. Farrington.

JOHNSTON, J. From the evidence the jury could have found that Mrs. Desrochers was causally at fault because of too great speed under the circumstances, inattention, intentional invasion of her left-hand lane rather than slowing down or stopping, or violation of section 10 of chapter 103 of the Public Laws (R. L., c. 119, s. 16). Mr. Farrington testified that he first saw the Desrochers car when he began his turn about 37½ feet northerly from the place of the accident and that it was then about the southerly end of the rail fence which scales 300 feet from the place of the accident. Mrs. Desrochers said she first saw the Farrington car when she had passed two-thirds of the rail fence, which point was about 170 feet

from the place of the accident. Her speed may have been 40 miles per hour. The Farrington car was approaching, there was a driveway to the cabins on her right, there was evidence that Mr. Farrington signaled with his hand his intention of turning to his left into the driveway before the Desrochers car came into sight and continued to do so up to and including the beginning of his turn, and also Mrs. Desrochers was on a curve. Mrs. Desrochers testified that she did nothing to avoid an accident until 30 to 40 feet from the point of collision, when she took her foot off the accelerator and put it on the brake. She thought she did not get much benefit from the brakes. She never saw the Woodbridge car until she swerved to go into the south-bound lane around the Farrington car.

None of the occupants of the Desrochers car who testified saw the approaching Woodbridge car, which was from one and one-half to two car lengths behind the Farrington car, prior to Mrs. Desrochers' seeing it, when the collision was imminent and unavoidable. The issue of a causal violation of P. L., c. 103, s. 10 by Mrs. Desrochers was properly submitted to the jury. The statutory requirement to slow down upon approaching a curve was designed to obtain greater caution when the view was obstructed. The obstruction may be due to the curve plus an object or objects of permanent or temporary character. In *Laflamme* v. *Lewis*, 89 N. H. 69, the poor visibility was due to fog. In the instant case it could be found that the Farrington car combined with the curve prevented Mrs. Desrochers, who was on the outside of the curve, from seeing the Woodbridge automobile. If this fact was found, then the provisions of the statute relating to approaching a curve applied.

The defendant Farrington objected and excepted to two portions of the argument of counsel for the defendant Desrochers. The first is the statement that Mr. Farrington did not see the Desrochers car and that he admitted this to the investigating officer. This statement was so often modified by the phrase "when he started to make the turn," that it must have been understood in this way. "*Mr. Murchie:* When he started to make the turn, that is my argument. *Court:* The jury will understand there is that reservation placed on it by Mr. Murchie." If the testimony of Mr. Farrington is considered, there seems to be no difference in the positions of counsel as to the time as shown by the location of the Farrington car when he saw the Desrochers automobile. He testified that when he got all set to make the turn and checked the road conditions there was no car approaching from the other direction and that he went ten or fifteen feet while making his turn before seeing the Desrochers car.

It is reasonably clear then that when counsel for Mrs. Desrochers argued that Mr. Farrington did not see her car when making the turn, he meant before reaching the end of this ten or fifteen feet, and that when counsel for the defendant Farrington argued that he did see the approaching car when he started to make his turn, he meant after the preliminary stage of the start. There was no misquotation of the evidence, and the statements to the investigating officer must have been quoted and understood in the light of this explanation.

The remaining exception is to the argument that Mr. Farrington when starting to make the turn may have been "blinded" for a short space because the sun was shining into his windshield and into his eyes. Mr. Farrington was headed toward the southwest. The sun was due to set in about an hour and a quarter. Three occupants of the Desrochers car testified that the sun was shining at their backs or back of the car. Although Mr. Farrington testified that he did not remember being bothered by the sun and that there was not strong sun in his eyes, and although the sun was shining from a substantial angle to the direction of his car, it cannot be said as a matter of law that, the inference argued was unwarranted. *Putnam* v. *Bowman*, 89 N. H. 200, 205. The weight of the argument was for the jury. It is not to be made a legal proposition that a low sun in front of one even if 45° or more to the right cannot interfere with one's vision directly or by refracted rays.

*Judgments on the verdicts.*

BRANCH, J., did not sit: the others concurred.